JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Lonnie Prather appeals from the trial court's decision to deny his petition for postconviction relief.
 {¶ 2} Prather presents six interrelated assignments of error. In them, he essentially asserts he provided evidence to support his claim of ineffective assistance of trial counsel in the form of affidavits which showed counsel failed to present the testimony of several witnesses who would have substantiated the defense theory of the case.
 {¶ 3} After a review of the record, however, this court cannot agree with Prather that the trial court abused its discretion when it denied his petition. Consequently, the trial court's decision is affirmed.
 {¶ 4} This court previously set forth the facts relating to Prather's original convictions in State v. Prather, Cuyahoga App. No. 83227, 2004-Ohio-2395 ("Prather I"). After a jury trial, Prather was convicted of three offenses, viz., murder with a firearm specification, tampering with evidence, and possession of criminal tools. The evidence adduced at trial is briefly stated as follows.
 {¶ 5} The murder victim was a woman with whom Prather, a married man, shared a sexual relationship and the ownership of a business enterprise. At the time of the incident, both the relationship and the business were strained; Prather even had remarked to a mutual friend that although he loved the victim, he would have to kill her if she ever "turned" on him.
 {¶ 6} On the day of the incident, Prather argued heatedly with an associate who had the potential to help the business, at one point threatening to resolve the dispute with a gun. Prather eventually left the victim to deal with the problem. A short time later, the victim joined Prather at a local tavern that used indoor video surveillance of the premises. The two engaged in an intense conversation which had the victim in tears and Prather slamming an item on the bar.
 {¶ 7} Prather eventually went outdoors, followed by the victim. Approximately ten minutes later, Prather returned, carrying a duffle bag, and went into the men's room. While Prather was inside, the bar owner also used the facility and heard splashing noises coming from the stall; the stall subsequently was found to bear smears of the victim's blood on its walls.
 {¶ 8} At about the time Prather was inside the men's room, three of his friends exited the building and discovered the victim was partially inside her van bleeding from the head. She appeared to have been dragged from the ground, where a large pool of blood and a spent 9mm gun casing lay. One of the friends, Christopher Wells, ran indoors to find Prather, obtained the duffle bag from him, and then entered the bar area. Wells later gave the duffle bag to his girlfriend, who saw that it contained a 9mm gun.
 {¶ 9} After handing the bag to Wells, Prather went outside. He called out even before arriving at the victim's van that she "shot herself." The victim was transported to the hospital, where she ultimately died from a noncontact gunshot wound to the head.
 {¶ 10} Prather was unaware of the existence of the video camera on the tavern's premises. While waiting for news of the victim's condition at the hospital, he voluntarily made statements to a police officer. Prather explained the victim had been upset by the days events and had gone to the ladies room. After a time, he went looking for her, found her bleeding in the parking lot, tried with the help of two strangers to pull her into her van, went back inside the tavern to find someone to call 911, and returned to the parking lot as the strangers drove away.
 {¶ 11} However, the videotape displayed a different scenario had taken place, and that Prather had in his shirt pocket a cellular telephone of his own when the victim followed him outdoors. Moreover, the 9mm gun in the duffle bag proved to have fired the casing found in the parking lot near the pool of blood.
 {¶ 12} The jury heard the testimony of eighteen prosecution witnesses and five defense witnesses; Prather did not testify in his own behalf. The jury additionally had the opportunity to review numerous items of physical evidence, including the videotape, before finding Prather guilty of the charges.
 {¶ 13} Represented by new counsel, Prather challenged his convictions in his subsequent direct appeal, i.e., Prather I. In relevant part, he claimed his conviction for murder was unsupported by the weight of the evidence and his trial counsel had provided ineffective assistance.
 {¶ 14} Prather first argued the evidence presented at trial supported the defense theory that the victim had committed suicide. In response to this argument, this court observed that although the victim had been found by several of her acquaintances, among them only Prather at that time made such a suggestion. Moreover, Prather's own actions belied his suggestion: he had not exited the tavern sometime after the victim left, he failed to use his own cell phone to summon help for the victim, and, significantly, he failed to mention his theory during his hospital interview. Additionally, no gun was found in the victim's vicinity, the victim's wound was not a contact wound, and the victim's "own doctor noted she had no suicidal tendencies."
 {¶ 15} This court also disagreed with Prather's claim that defense counsel provided ineffective representation, in part by observing that counsel "made a tactical decision to present a theory of the case that, despite its flaws, meshed with [Prather's] suggestion of suicide made at the scene." Prather's convictions were affirmed. The Ohio Supreme Court subsequently rejected his subsequent attempt to seek further review of his convictions. State v. Prather, 103 Ohio St.3d 1478, 2004-Ohio-5405
("Prather II").
 {¶ 16} In March 2004, while his appeal in Prather I was pending decision, Prather filed a petition for postconviction relief pursuant to R.C. 2953.21, claiming his constitutional rights had been violated by trial counsel's ineffective assistance. Specifically, Prather asserted despite having knowledge of three witnesses who would have testified the victim was suicidal and mixing drugs and alcohol just before her death, defense counsel failed to use their testimony at trial.
 {¶ 17} Prather attached to his petition four affidavits. In his own, he gave a lengthy version of his actions and interactions with the victim that led her to "pull out a gun and put it to her head" so that "the gun went off and she fell to the ground." The three other affidavits were those of associates, viz., Andrew Kiss, who had testified for the prosecution at Prather's trial, David Wise, and Nanci Stambaugh. Each person averred he or she saw the victim ingest several "Percocet" pills and some alcohol during the day of the incident; each also indicated he or she gave that information either to Prather's attorney or to the defense investigator.
 {¶ 18} Approximately a month later, the state filed an opposing brief, arguing Prather's petition should be denied as barred by the doctrine of res judicata and/or as unsupported.
 {¶ 19} A few days thereafter, Prather requested of the trial court leave to file instanter a "supplement" to his petition. The "supplement" set forth several more arguments in support of his claim of ineffective assistance of trial counsel. Moreover, Prather attached to the supplement numerous additional documents, including another personal affidavit. Therein, Prather stated the remaining attachments represented "proposed affidavits" setting forth the "facts as I know them to be and as I expect each witness will testify and would have so testified at trial," handwritten "actual notes [he] took * * * before trial," xeroxed copies of articles concerning clinical studies done on drugs Prather asserted the victim had been taking at the time of the incident, and, finally, a "request to disqualify [trial] counsel" that Prather acknowledged he actually never sought.
 {¶ 20} Approximately a month after this court's decision in PratherI, the trial court denied Prather's request to supplement his petition. That same day, the trial court denied Prather's petition. The trial court justified its decision with lengthy findings of fact and conclusions of law in which it determined Prather failed to support any claim of ineffective assistance of trial counsel that had not been already foreclosed by the doctrine of res judicata.
 {¶ 21} Prather now appeals from the denial of his petition; he presents the following six assignments of error for review:
 {¶ 22} "I. The trial court erred as a matter of law in determining that evidence outside the record could have been presented on direct appeal and applying res judicata to appellant's claims.
 {¶ 23} "II. The trial court erred and abused its discretion in finding that appellant's own affidavit was `merely an effort to back door his testimony without being subjected to cross examination' where appellant asserted inefective (sic) counsel for refusing to allow appellant to testify at trial as a specific and enumerated ground for relief.
 {¶ 24} "III. The trial court erred in determining that none of the evidence from the witnesses who were not called due to the ineffectiveness of trial counsel would have been `outcome determinative' where the defense theory of the case was suicide, all of the extant witnesses had evidence sugesting (sic) that the decedent was suicidal, and none of the evidence was presented at trial.
 {¶ 25} "IV. The trial court erred in determining that trial counsel was not ineffective where appellant demonstrated both prongs of the Strickland analysis.
 {¶ 26} "V. The trial court erred and abused its discretion in refusing to conduct an evidentiary hearing on the issues set forth in the petition.
 {¶ 27} "VI. The trial court erred and abused its discretion in refusing to grant relief on the petition."
 {¶ 28} Prior to addressing Prather's assignments of error, it is first important to note that none challenges the trial court's denial of his request to file a "supplement" to his petition for postconviction relief. Therefore, even if the "evidence" he attached to that "supplement" were competent, this court will not consider any argument that relates to it. App.R. 12(A)(1)(b).
 {¶ 29} Prather essentially argues he demonstrated substantive grounds for relief that could not have been raised on direct appeal of his convictions; hence, an evidentiary hearing was appropriate. This court disagrees.
 {¶ 30} Absent a showing of an abuse of discretion, a reviewing court will not overrule a trial court's decision on a petition for postconviction relief that is supported by the evidence and the record.State v. Calhoun, 86 Ohio St.3d 279, 1999-Ohio-102. A defendant who challenges his convictions by this means, moreover, is not automatically entitled to an oral hearing. State v. Cole (1982), 2 Ohio St.3d 112. Rather, when alleging he received ineffective assistance of counsel, the defendant is required to demonstrate not only that counsel was so incompetent as to deny defendant his constitutional right, but also "that such errors resulted in prejudice before a hearing is scheduled."Calhoun, supra at 283, citing State v. Jackson (1980), 64 Ohio St.2d 107,112.
 {¶ 31} The defendant accomplishes this task by submitting evidentiary documents of sufficient quality to justify the trial court's decision, in the exercise of its discretion, to order an oral hearing. Nevertheless, even when affidavits are filed in support of the petition, although a trial court "should give [them] due deference," it may also "judge their credibility in determining whether to accept the affidavits as true statements of fact." Calhoun, supra at 284.
 {¶ 32} In assessing the credibility of affidavit testimony, the trial court should consider "all relevant factors." Id. at 285. Relevant factors include: 1) whether the judge reviewing the petition also presided at the trial; 2) whether multiple affidavits appear to have been drafted by the same person; 3) whether an affidavit contains hearsay; 4) whether the affiants are persons interested in the success of the petitioner's effort; and, further, 5) whether an affidavit either contradicts evidence offered by the defense at trial, or contradicts evidence in the record given by the same witness, or is internally inconsistent and thus weakened in credibility. Id.
 {¶ 33} The record in this case supports the trial court's decision to deny Prather's petition without a hearing.
 {¶ 34} First, the issue of trial counsel's effectiveness in presenting Prather's defense was raised in Prather I. Therefore, the trial court properly concluded his claim was barred by the doctrine of res judicata.State v. Perry (1967), 10 Ohio St.2d 175.
 {¶ 35} Second, the same judge who reviewed Prather's petition presided at trial. The judge acted within his discretion to observe that since Prather had not testified at trial, his affidavit constituted an improper and self-serving attempt to expand upon statements he had made on the night of the shooting. The other three affidavits appear to have been drafted by Prather, rely upon hearsay, and are those of persons who share an interest in his effort to overturn his convictions.
 {¶ 36} Moreover, the record reflects Prather's claim of ineffective assistance of trial counsel lacked substantive support. State v. Norman,
Cuyahoga App. No. 83561, 2004-Ohio-2409; State v. Harris (June 29, 2000), Cuyahoga App. No. 76444.
 {¶ 37} In conjunction with the file of this case, the competent affidavits demonstrated counsel was aware additional defense witnesses were available. Counsel's decision to refrain from introducing certain testimony is one well within the ambit of trial strategy. State v.Norman, supra, ¶ 5. Not only was this evidence cumulative, but each of the witnesses either had an interest in Prather's case or lacked expertise in the area of the subject matter of the testimony. Thus, such evidence was vulnerable to destructive cross-examination by the prosecutor. State v. Gammalo, Cuyahoga App. No. 82853, 2004-Ohio-482.
 {¶ 38} As this court stated in Prather I, although his trial counsel "made a tactical decision to present a theory of the case * * * that meshed with appellant's suggestion of suicide made at the scene," in view of theory's obvious "flaws" with respect to the evidence, it is reasonable to presume counsel also tactically decided not to push that theory beyond an attempt to raise a reasonable doubt.
 {¶ 39} Since the trial court's decision to deny Prather's petition for postconviction relief thus finds support in the record, his assignments of error are overruled.
Affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, JR., P.J. and McMONAGLE, J. concur.